| | | |
|---|---|---|
| Galen P. Rufus, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | Case No.  1:17-cv-96 |
| James Sayler, Warden of the Missouri | ) | |
| River Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

Before the court is a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a

Person in State Custody filed by petitioner, Galen Rufus ("Rufus").[1]  (Doc. No. 1).  Also before the

court is a Motion to Dismiss by respondent, James Sayler ("the State").  (Doc. No. 16).

## I.    BACKGROUND

### A.    Trial

On November 7, 2013, Rufus was charged in state district court by way of information with

(1) human trafficking, a class AA felony; (2) unlawful possession of marijuana with intent to deliver,

a class B felony; (3) unlawful possession of morphine, a class C felony; (4) unlawful possession of

hydrocodone, a class C felony; and (5) unlawful possession of drug paraphernalia, a class A

misdemeanor.  (Doc. No. 15-2).  Rufus pled guilty to counts (2), (3), and (5).  (Doc. No. 15-1).  The

State dismissed count (4).  Rufus waived his right to a jury trial as to the human trafficking charge.

(Doc. No. 15-3).  After a bench trial, the state district court found Rufus guilty of human trafficking.

---

[1]Rufus has informed the court he is no longer incarcerated as of November 28, 2017.  (Doc. No. 25).  The court will address Rufus's petition as it would if Rufus remained incarcerated because Rufus filed his petition while still incarcerated and he likely remains in "custody" for habeas purposes while he serves out the term of probation ordered by the state court.  Harvey v. State of S.D., 526 F.2d 840, 841 (8th Cir. 1975) (stating "custody" for habeas purposes "has been equated with significant restraint on liberty, such as parole, or release on the individual's own recognizance.").

(Doc. No. 15-4).  The state district court sentenced Rufus to ten years' imprisonment, with five years suspended and with five years of probation to follow.  (Doc. No. 15-5).

B.      Direct Appeal

Rufus appealed his conviction on the human trafficking charge to the North Dakota Supreme Court on October 27, 2014.  (Doc. No. 15-1).  In that appeal, Rufus argued: (1) the record did not support the state district court's findings of fact; (2) insufficient evidence supported his conviction with respect to (a) whether he would have caused the minor child to engage in sexual conduct, (b) whether he completed a substantial step towards committing the crime, and (c) whether he acted with the requisite culpability; and (3) his charge should not have been classified as a class AA felony. The North Dakota Supreme Court concluded the record supported the state district court's findings of fact, sufficient evidence justified his conviction, and his charge was properly classified as a class AA felony.  State v. Rufus, 2015 ND 212, 868 N.W.2d 534.  ("Rufus I").  The court issued its mandate on September 23, 2015.  (Doc. No. 15-1).

C.      State Postconviction Proceedings

Rufus filed an application for postconviction relief with the state district court on October 23, 2015.  (Doc. No. 15-9).  That application asserted multiple claims for relief.  Of those claims, the state district court construed Rufus's application as raising ineffective assistance of counsel[2] claims as to: (1) failure to demand a change in judge; (2) failure to request a change in venue; (3) wrongful waiver of trial by jury; (4) failure to present an entrapment defense; and (5) failure to keep

_____

[2]Attorney Tom Slorby originally represented Rufus in the criminal proceeding.  Attorney William Kirschner subsequently replaced Slorby as counsel.  This substitution occurred after Rufus pled guilty to the various drug charges but before the bench trial on the human trafficking charge.  As is relevant here, Rufus only complains of Kirschner's conduct, not that of Slorby.  Accordingly, the court's references to trial counsel reference Kirschner.

Rufus apprised of his case. (Doc. Nos. 15-11; 15-13). Rufus also asserted a due process violation, alleging the State charged him on information it "knew or should have known came from Outrageous Police Conduct (entrapment)." (Doc. No. 15-10). Finally, Rufus alleged he was denied a fair trial because the presiding judge was biased. (Doc. No. 15-10).

Prior to an evidentiary hearing on the application, the court summarily dismissed two of Rufus's claims for ineffective assistance of counsel. First, the court concluded trial counsel was not ineffective for failing to request a change in judge because the time for doing so had already lapsed by the time trial counsel began representing Rufus. (Doc. No. 15-11 p. 7). Second, the court concluded trial counsel was not ineffective for failing to request a change in venue because a change in venue is only relevant for a jury trial, a right Rufus had previously waived. (Doc. No. 15-11). The state district court allowed the remainder of Rufus's claims to proceed to an evidentiary hearing, which the court held on November 10, 2016. (Doc. No. 15-12).

After the evidentiary hearing, Rufus moved to amend his application for postconviction relief to include ten additional claims. (Doc. No. 18 pp. 37-57). Rufus argued allowing this amendment was appropriate because the evidence and testimony provided at the evidentiary hearing supported those claims. (Doc. No. 18 p. 32). Because that information was already before the court, Rufus argued no further hearings were necessary and the State would not be prejudiced. The state district court denied Rufus's motion to amend his application, concluding the issues raised therein were not raised at the evidentiary hearing and allowing the amended application would be unfair. (Doc. No. 15-13).

As to the claims raised in the original application, the court found such claims unfounded. The court concluded trial counsel was not ineffective for waiving Rufus's right to a jury trial because

that decision was a matter of trial strategy, trial counsel explained that decision to Rufus, and Rufus ultimately agreed to that strategy. The court also concluded trial counsel was not ineffective for failing to present an entrapment defense because that decision was a matter of trial strategy and trial counsel felt Rufus's best chance of an acquittal rested on a legal defense that entrapment would contradict. Finally, the court concluded Rufus had not borne his burden of establishing trial counsel's lack of communication affected the outcome of his trial. As to the due process claim, the court concluded Rufus had not substantiated his claims of prosecutorial misconduct. As to the fair trial claim, the court concluded Rufus failed to prove up his claim of bias by the presiding judge. The state district court denied Rufus's petition in its entirety on December 8, 2016.

Rufus appealed that order on December 22, 2016. (Doc. No. 15-9). In that appeal, Rufus faulted the state district court for not allowing him to amend his application. (Doc. No. 15-14). He also included the ten claims, issue by issue, he sought to include in his proposed amended application. The State responded by arguing the state district court properly denied Rufus's motion. (Doc. No. 15-15). The State also argued many of the issues Rufus raised were not addressed in the postconviction proceeding or were addressed in the underlying criminal case. (Doc. No. 15-15). In an unpublished opinion, the North Dakota Supreme Court summarily affirmed the denial of Rufus's application for postconviction relief on May 4, 2017. Rufus v. State, 2017 ND 83, 894 N.W.2d 908.

D.    Federal Habeas Petition

Rufus next filed his § 2254 petition with this court on May 12, 2017. (Doc. No. 1). In the petition itself, Rufus raises twelve grounds for relief. (Doc. Nos. 1, 4). In grounds one and twelve, he alleges N.D.C.C. ch. 12.1-40 was unconstitutional under N.D. Const. art. IV, § 13, thus voiding both his drug and human trafficking convictions. In ground two, Rufus alleges he suffered a denial

4

of his Sixth Amendment right to a fair trial because his conditions of confinement limited his ability to effectively communicate with his counsel. In ground three, Rufus alleges he was entrapped by what he characterizes as outrageous police conduct. In ground four, Rufus alleges the State secured his conviction through the use of inadmissible evidence. Grounds five, six, eight, and ten generally allege there was insufficient evidence to convict Rufus of human trafficking. Ground seven contains multiple claims relating to the lack of a victim and the State's conduct. Ground nine focuses on the legislative repealing and replacing of N.D.C.C. ch. 12.1-40. Ground eleven alleges the North Dakota state courts wrongly applied the culpability requirement for a human trafficking charge. Additionally, Rufus incorporates the brief he submitted to the North Dakota Supreme Court in alleging ten additional grounds for relief, making a total of twenty-three claims for habeas relief.[3]

E.     Evidence Supporting Rufus's Conviction

The following factual summary, taken verbatim from the decision of the North Dakota Supreme Court at Rufus I, at ¶¶ 2-3, provides context in evaluating this petition:

> [¶2] Rufus responded to an advertisement posted on Craigslist under "personals > casual encounters" by a Ward County Deputy Sheriff using the undercover persona of "Chad Russo." The advertisement indicated Russo's girlfriend would be out of town for the weekend and her daughter wanted to make some money while her mother was gone. According to the advertisement, interested individuals could contact Russo for more details. Rufus responded to the advertisement requesting more information. Russo replied, informing Rufus that the girl was fourteen years old. Rufus asked Russo whether it would be illegal, as the girl was only fourteen, and requested more details. Russo acknowledged fourteen was illegal, but indicated he would not tell anyone. In two separate online Yahoo Messenger conversations, Russo and Rufus discussed the pricing for various sexual acts and a meeting place and time. Russo also sent Rufus a picture of "the girl." During Yahoo Messenger conversations,

---

[3]Confusingly, Rufus has not changed the numbering of the issues from what he submitted on appeal. As a result, he has presented this court with multiple issues with the same numbering. For the sake of simplicity, the undersigned will refer to the issues contained in Rufus's appellate brief as starting with ground thirteen.

Rufus agreed to exchange two bags of marijuana, each worth $60, for one hour of time with the fourteen-year-old girl as follows:

> Russo: . . .we meet tonight and I'll bring her with, she likes to hit it too . . . we can work it out . . . you bring something for me and she can take care of you
> Rufus: OK your [sic] on, what works for u [sic] guys . . . .
>
> Russo: 1 hr with her do [sic] do whatever you want . . . no freaky shit . . . for two 60 bags . . . sound right? . . . .
>
> Rufus: u [sic] got it, and im [sic] looking for something else just for a good time

Rufus and Russo agreed to meet in a parking lot at 9:00 p.m. Russo told Rufus to bring condoms if he wanted to have sexual intercourse with the girl. Rufus arrived and was arrested. The deputy found marijuana and money on Rufus. The deputy also found a cooler containing beer, additional marijuana, one morphine pill, and one oxycodone pill in Rufus's vehicle.

[¶3] Rufus was charged with human trafficking. Rufus waived his right to a jury trial and, on May 28, 2014, the district court held a bench trial. The court issued its findings and verdict, convicting Rufus of human trafficking, a class AA felony. The district court entered judgment on October 21, 2014, sentencing Rufus to ten years of incarceration, with five years suspended. Rufus appealed, challenging the sufficiency of the evidence, and alternatively, whether the offense should be classified as a class AA felony.

II.    **GOVERNING LAW**

A.    Scope of Review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. However, where the state court has adjudicated the federal claim on the merits, this court's review is limited by 28 U.S.C. § 2254(d) to a determination of whether the state court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination

of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d); see generally Harrington v. Richter, 562 U.S. 86, 97-100 (2011) ("Richter"); Williams v. Taylor, 529 U.S. 362, 399-413 (2000). This highly deferential standard of review is often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 n.1 (2010). The reasons for the limited review are ones of federalism and comity that arise as a consequence of the state courts having primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103.

### B.     Exhaustion Requirements

The exhaustion doctrine codified at 28 U.S.C. § 2254(b)-(c) precludes granting habeas relief for claims that have not been properly exhausted in the state courts. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components. First, the claim must be "fairly presented," which requires that the petitioner present both the factual and legal premises for the claim, with the latter being satisfied if there is a reference to the particular federal constitutional right or a citation to a state or federal case that raises the constitutional issue. Dansby v. Norris, 682 F.3d 711, 722-23 (8th Cir. 2012), vacated on other grounds, Dansby v. Hobbs, No. 12-8582, 2013 WL 506561 (U.S. June 3, 2013); Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007). Second, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are three other aspects of the exhaustion doctrine that are important. The first is that the exhaustion doctrine is satisfied if there are no state-court remedies available and

exhaustion would be futile, such as when the claim has been procedurally defaulted at the state-court level. E.g., Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005). The second is that Rose v. Lundy, 455 U.S. 509 (1982), prohibits a petitioner from proceeding with a "mixed petition" of exhausted and unexhausted claims. See also Rhines v. Weber, 544 U.S. at 273-74. The third is that § 2254(b)(2) authorizes the court to deny a claim on the merits notwithstanding a failure to exhaust. E.g., Gringas v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008).

C.     Procedural Default

A federal district court is precluded from substantively considering a habeas claim that has been procedurally defaulted at the state level on independent and adequate state grounds. E.g., Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). State procedural grounds are independent and adequate if they are firmly established, readily ascertainable, and regularly followed. Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007). They must also further a legitimate state interest and not be applied in an exorbitant manner. Barnett, 541 F.3d at 808. The rule barring procedurally-defaulted claims is nearly absolute. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007). The only exceptions are the rare instances when a prisoner is able to meet the strict cause and prejudice or actual innocence standards. E.g., Dretke v. Haley, 541 U.S. 386, 392-93 (2004); Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).

D.     State Defenses of Res Judicata, Misuse of Process, and Statute of Limitations

Under N.D.C.C. § 29-32.1-12, res judicata and misuse of process are affirmative defenses in state proceedings for postconviction relief. Res judicata is defined in subsection (1) to be a claim that was fully and finally determined in a prior proceeding. Misuse of process is defined in subsection (2)(a) to include any "claim for relief which the applicant inexcusably failed to raise

8

either in a proceeding leading to a judgment of conviction and sentence or in a previous postconviction proceeding[.]" As an additional defense, N.D.C.C. § 29-32.1-01(2) requires applicants for postconviction relief to file their application within two years of the date of their conviction becoming final, unless a specific exception applies. These procedural defenses are regularly enforced by North Dakota courts. E.g., Eagleman v. State, 2016 ND 54, 877 N.W.2d 1; Tweed v. State, 2011 ND 228, ¶ 12, 807 N.W.2d 599; Steen v. State, 2007 ND 123, ¶¶ 13-17, 736 N.W.2d 457; Laib v. State, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845.

III.   **DISCUSSION**

    A.   Grounds One & Twelve: Constitutionality of N.D.C.C. ch. 12.1-40.

In his first and twelfth grounds for relief, Rufus argues N.D.C.C. ch. 12.1-40 was unconstitutional under N.D. Const. art. IV, § 13. Habeas relief under 28 U.S.C. § 2254 is limited to those persons "in custody in violation of the Constitution or laws or treaties of the United States." This does not allow for review of a state constitutional claim. Velez v. Martinez, 510 F.2d 605, 606 (1st Cir. 1975) (noting "the federal courts have no jurisdiction over a claim alleging simply a violation of the state constitution."); McKinney v. Parsons, 513 F.2d 264, 267 (5th Cir. 1975) (noting, as "federal courts, neither we nor the district court has habeas corpus jurisdiction to consider whether McKinney's convictions violated rights secured to him by the Constitution of the State of Alabama."). Even if Rufus could demonstrate a violation of the North Dakota Constitution, that claim is not cognizable in this habeas proceeding. Accordingly, Rufus's first and twelfth claims for relief are dismissed as falling outside this court's habeas review.

    B.   Ground Two: Denial of Sixth Amendment Right to a Fair Trial

Rufus fashions his second ground for relief as one for violation of his right to a fair trial. According to Rufus, overcrowding at the Ward County Jail prevented him from consulting with his counsel about his case. Rufus also represents he did not have access to a secure phone line while incarcerated and prison official searched his mail, both of which prevented him from candidly discussing his case with trial counsel. On this basis, Rufus argues he was denied the fair trial to which the Sixth Amendment guaranteed him.[4]

Nothing in Rufus's original application raised this issue. Rather, Rufus first raised this issue in his amended application that he attempted to file after the evidentiary hearing on his original application. (Doc. No. 18 pp. 37-57). The district court denied Rufus's attempt to amend his original application, concluding Rufus could not raise new issues after closure of the evidentiary hearing. (Doc. No. 15-13). Rufus appealed the district court's refusal to consider his amended application, (Doc. No. 15-14), which the North Dakota Supreme Court rejected. Rufus II, at ¶ 1.

As discussed above, habeas relief is not available when state courts rely on independent state procedural grounds to deny a state application for postconviction relief. Coleman, 501 U.S. at 729-30. Whether to allow an amended application for postconviction relief is a matter of state procedure. Johnson v. State, 2006 ND 112, ¶ 7, 714 N.W.2d 832 (noting state rules of civil procedure govern a motion to amend an application for postconviction relief). Because the state courts relied on a state procedural rule in refusing to entertain Rufus's fair trial claim, this court's inquiry is limited to whether that state rule is a firmly established and regularly followed state practice. Francis v. Miller, 557 F.3d 894, 898 (8th Cir. 2009). Rufus has not alleged, much less

---

[4]Rufus's second claim also reads: "also ineffective assistance of counsel." (Doc. No. 1 p. 7). This is nothing but a perfunctory allegation unaccompanied by any explanation as to how Rufus's conditions of confinement can be parlayed into an ineffective assistance of counsel claim. Without any elaboration, the court will not address it further.

proven to any reasonable degree of satisfaction, that any such claim exists. In that absence, this court is without jurisdiction to consider the substance of Rufus's second ground for relief because the state courts denied it on an independent state procedural basis, resulting in procedural default.[5] That being the case, Rufus's second ground for relief must be dismissed.

C.     Grounds Three: Entrapment

Rufus's third ground for relief is convoluted and leaves the court to guess as to the exact nature of his claim. Rufus entitled the claim itself as "Outrageous Police Conduct, Aiding & Abetting, Entrapment." (Doc. No. 1 p. 8). The claim reads in its entirety:

> Detective, Mark Holder, posted an add on Craigslist soliciting a fictitious female and when I told him that I was not interested he then offered to trade time with the female for marijuana. Used coercive tactics to persuade and induce, she's special, knows what she's doing, no specific deal was made, concerning her services.

(Doc. No. 1 p. 8). As the court understands it, this ground raises an entrapment defense. This is not a cognizable basis for habeas relief because entrapment is not a constitutional defense. United States v. Russell, 411 U.S. 423, 432 (1973) (noting an entrapment "defense is not of a constitutional dimension."); United States v. York, 830 F.2d 885, 890 (8th Cir. 1987) (noting an "entrapment defense is not of constitutional origin."). As a result, most "of the United States Courts of Appeal which have addressed the issues of entrapment as basis for Federal habeas corpus relief have reached the conclusion such claims are not cognizable in a § 2254 petition." Reves v. Kelly, Case No. 4:16-

---

[5]Whether the state district court erred in not allowing Rufus to amend his application for postconviction relief following the evidentiary hearing pervades many of the grounds for relief now before the court. This matter, however, is outside the scope of this court's habeas review. Kenley v. Bowersox, 228 F.3d 934, 938-39 (8th Cir. 2000) judgment vacated on other grounds by 234 F.3d 1339 (8th Cir. 2000) (noting a federal court's § 2254 review "is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings."). Accordingly, the court cannot consider what is, in essence, an alleged procedural error that occurred during a state postconviction proceeding.

cv-4020, 2017 WL 925010 at *2 (W.D. Ark. February 8, 2017). Accordingly, any entrapment claim Rufus may have falls outside this court's habeas review and must be dismissed.

    D.    <u>Ground Four: Inadmissible Evidence</u>

At trial, the State introduced into evidence the Craigslist posting to which Rufus responded. Rufus's fourth ground can be read in two ways. This claim can be read as alleging Rufus's conviction was secured through the introduction of inadmissible evidence. It can also be read as alleging Rufus's trial counsel was ineffective for not objecting to the introduction of this evidence.

*1. Admission of Inadmissible Evidence*

Under a charitable interpretation, Rufus's petition alleges the Craigslist posting lacked the foundation necessary for introduction at trial because, according to Rufus, this information could have been fabricated.[6] (Doc. No. 1 p. 10) (alleging the "Detective testified that the cut-n-pasted transcript can be altered to meet the prosecutions agenda . . . ."); <u>see also</u> N.D.R.Evid. 901(a) (stating, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). The Eighth Circuit has made clear that errors "in the admission of evidence by a state court . . . are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or resulted in a trial so fundamentally unfair as to deny due process of law." <u>Wedermann v. Solem</u>, 826 F.2d 766, 767 (8th Cir. 1987). "No due process violation exits, even if the evidence was erroneously admitted, if other evidence of guilt is so overwhelming that the error is harmless." <u>Id.</u> Rufus has not provided any cogent theory for how

---

[6]Notably absent from Rufus's petition is any allegation the Craigslist posting introduced at trial <u>was actually</u> fabricated; rather his claim is limited to alleging the posting <u>could</u> have been fabricated. (Doc. No. 1 p. 9) (noting "the cut-n-pasted transcript can be altered to meet the prosecution's agenda . . . .").

such evidence should have been excluded for lack of foundation, has not alleged a specific constitutional violation arising therefrom, and has not alleged a due process violation. Even if he had, such an allegation would be for naught.

To the extent Rufus's petition can be read as raising the issue, this claim also lacks merit. As Rufus's petition itself notes, introduction of the Craigslist posting was "not objected to." (Doc. No. 1 p. 9). By failing to object to introduction of the Craigslist posting, any prejudice resulting therefrom would be invited error. Fields v. Bagley, 275 F.3d 478, 486 (6th Cir.2001) ("When a Petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error."); Parker v. Champion, 148 F.3d 1219, 1221–22 (10th Cir.1998) (noting that habeas relief on the basis of an invited error is precluded); Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir.1993) (en banc) ("Even if we were to find such error in the trial of this case in the state court, the error was invited and therefore cannot form the basis for habeas corpus relief."). Rufus cannot obtain relief for an error he invited.

Additionally, to the extent raised, this claim is unexhausted. Rufus did not raise any evidentiary issue in his direct appeal or his original application for postconviction relief; rather, he waited until his amended application to raise the issue. (Doc. No. 18 pp. 56-57). Even then that evidentiary claim was limited to the allegation the Craigslist posting was admitted in circumvention of the best evidence rule under N.D.R.Ev. 1002, 1003, not whether the posting was admitted without proper foundation under N.D.R.Ev. 901(a). (Doc. No. 15-14 p. 33) (stating "the trial would have been stopped and the case dismissed for lack of proof, for lack of the "Best Evidence," lack of the original messages, which existed but were not used at trial."). Further, it is too late now for Rufus

to return to state court to properly exhaust the claim; hence, it can be denied here under the precedent cited earlier.

## 2. Ineffective Assistance of Counsel

To the extent Rufus's claim can be read as raising an ineffective assistance of counsel claim for failing to object to introduction of the Craigslist posting, that claim too suffers from a want of proper exhaustion. Rufus's original application for postconviction relief did not include any ineffective assistance of counsel claim regarding evidentiary issues. Although Rufus arguably included such an issue in his amended application, that ineffective assistance of counsel claim focused on the best evidence rule, not foundational issues. The petition currently before the court is the first time Rufus has brought this issue before any court. His failure to fairly present the issue to the state courts, whether on direct appeal or in the postconviction proceeding, warrants its denial, again because it too late to return to state court to properly exhaust the claim.

### E. Ground Five, Six, Eight and Ten: Insufficient Evidence

Rufus's petition contains a number of claims that, though styled differently, all relate to his general allegation that insufficient evidence supported his conviction for human trafficking. Because each claim concerns a different part of his underlying conviction and each also contains its own procedural posture, the undersigned will address each in turn. In doing so, the court is cognizant that its 28 U.S.C. § 2254(d) review is limited to determining whether the factual conclusions reached in the state court proceeding constitute an unreasonable determination of the facts based on the evidence presented therein. This occurs only where a habeas petitioner "shows by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). Accordingly, the factual

conclusions reached during Rufus's state court proceedings are entitled to a great deal of deference and the burden rests with Rufus to overcome the applicable presumption of correctness.

### 1. Ground Five

In ground five, Rufus alleges insufficient evidence justifies his conviction because (1) there was no person-to-person communication; (2) there was no meeting of the minds; (3) the detective "quoted prices for sexual acts but was turned down"; and (4) authorities failed to find any incriminating material on his computer, telephone, in his home, or in his vehicle. (Doc. No. 4 p. 1). On direct appeal, Rufus did not present the North Dakota Supreme Court with any allegation resembling those set forth in his fifth ground for relief Rufus also did not allege any insufficiency of the evidence claim resembling his fifth ground for relief in his application for postconviction relief. (Doc. No. 15-10). Giving Rufus the benefit of a charitable interpretation, he asserted such claims in his amended application. As belabored above, however, the district court denied Rufus's attempt to amend his application to include such claims, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and regularly followed. Rufus has not made any allegations that neither is the case. Without the existence of such circumstances, and without having brought this particular insufficiency of the evidence claim to the state courts, this court cannot consider the substance of Rufus's fifth ground for relief.

### 2. Ground Six

In ground six, Rufus alleges insufficient evidence showed he took a substantial step towards committing human trafficking because he only arrived at the agreed upon location and still had time to change his mind. In bullet-point fashion, Rufus's claim reads:

(a)  Showing up at a parking lot and immediately being arrested before the vehicle was stopped does not justify a substantial step.

(b)  The Detective testified that he did [sic] was not sure was to take place and that no deal was made.  We were going to drink a beer (See Detectives Testimony in Trial Transcript).

(c)  There was ample time to change our minds.

(Doc. No. 4 p. 1).  Rufus elaborated on this claim in the appellate brief he submitted to the North Dakota Supreme Court during his postconviction proceeding.  In that brief, Rufus alleged a substantial step, for purposes of North Dakota's criminal attempt statute, requires conduct that "must reach far enough as to amount to almost total consummation of the crime attempted."  (Doc. No. 1 p. 40).  According to Rufus, his showing up at the agreed upon place "can be said to be only, at its worst, 'preparation', but not 'planning', because no facts exist."  (Doc. No. 1 p. 40).  This was so "because he still had plenty of time to change his mind once he aw the girl at the parking lot."  (Doc. No. 1 p. 41).  On this basis, Rufus argues there was insufficient evidence to show he took a substantial step towards committing human trafficking.

Rufus's argument is a selective cherry-picking of the evidence presented at trial.  Contrary to Rufus's characterization, far more evidence supported the conclusion he took a substantial step toward committing human trafficking than his mere appearance at the agreed upon location.  The North Dakota Supreme Court summarized the entirety of the record on this point:

We next consider the second element that Rufus intentionally engaged in conduct which constitutes a substantial step toward commission of human trafficking. Rufus downloaded Yahoo Messenger to continue communicating with Russo regarding the girl, bartered over the rates for the girl, agreed to the transaction, appeared at the agreed upon meeting location at the appropriate time, and brought with him the agreed medium of exchange, marijuana. Rufus disputes that this conduct qualifies as a substantial step toward the commission of human trafficking. Rufus's agreement to exchange a quantity of marijuana for an hour alone with the girl, combined with his

showing up at the agreed upon meeting location with the medium of exchange, qualifies as sufficient evidence of intentional conduct to show a substantial step toward attempting to obtain the fourteen-year-old girl for the purpose of engaging in sexual acts.

Rufus I, at ¶ 24. At trial, the state district court heard testimony and received evidence indicating (1) Rufus responded to an internet posting advertising the availability of an underage girl for sexual services; (2) Rufus engaged in extensive negotiation to secure such services; (3) Rufus arranged a time and place to meet; (4) Rufus arrived at that location at the appointed hour; and (5) Rufus had in his possession the agreed upon medium of exchange. The record established at trial amply supports the state courts' factual conclusion Rufus took a substantial step towards committing human trafficking and Rufus has not carried his burden of overcoming the presumption of correctness applicable to that factual conclusion.

Rufus's argument that he did not take a substantial step towards committing the crime because he could have changed his mind until the moment of consummation does not change this conclusion. Contrary to Rufus's argument, criminal attempt does not require near consummation of a crime—it only requires evidence of "any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime." N.D.C.C. § 12.1-06-01. The record presented to both the state courts and this court is replete with evidence strongly corroborative of Rufus's intent under the circumstances. While he repeatedly claims he had no intent to commit human trafficking, the totality of his conduct indicated otherwise. Again, Rufus has not carried his burden of overcoming the applicable presumption of correctness, warranting denial of the claim.

    *3. Ground Eight*

In ground eight, Rufus alleges there was not evidence demonstrating he knew the victim would be subject to human trafficking. Although this is the extent of his ground for relief, Rufus further elaborated on his claim in the appellate brief he submitted to the North Dakota Supreme Court during his postconviction proceeding. According to Rufus, the State "failed to charge facts showing that Rufus knew, had knowledge that the girl 'will be subjected to human trafficking.' And there were no facts of knowledge introduced and proven at trial." (Doc. No. 1 p. 46). On direct appeal, Rufus did not present the North Dakota Supreme Court with any allegation resembling that set forth in his eighth ground for relief, nor did he do so in his application for postconviction relief. (Doc. No. 15-10). Giving Rufus the benefit of a charitable interpretation, he asserted such claim in his amended application. As belabored above, however, the district court denied Rufus's attempt to amend his application to include such claim, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and regularly followed. Again, Rufus has not demonstrated that neither is the case. Without the existence of such circumstances, this court cannot consider the substance of Rufus's fifth ground for relief as they have been procedurally defaulted at the state court level.

### 4. *Ground Ten*

Rufus's tenth ground for relief is entitled "Complaint and Affidavit failed to charge the offence of Attempted Human Trafficking." (Doc. No. 4 p. 2). Though the title of the claim seemingly takes exception with the charging instrument used in his criminal case, the substance of the claim is indicative of two distinct insufficiency of the evidence claims.

#### a. "Obtaining" the Underage Girl

Subsection (a) of Rufus's tenth claim reads the "facts claimed by the Prosecution noted that the Defendant attempted to obtain but failed to show facts to support their claim." (Doc. No. 4 p. 2). Under a liberal reading, this claim takes exception with the sufficiency of the evidence underlying the state courts' determination Rufus attempted to "obtain" the underage girl. During his direct appeal, Rufus argued he did not attempt to "obtain" the underage girl, but only attempted to "obtain" sexual services from the minor. The North Dakota Supreme Court interpreted the human trafficking statute in effect to "encompass acquiring temporary custody of a person for the purpose of engaging in commercial sex acts with that person." Rufus I, at ¶ 19. Applying this interpretation, the court outlined the evidence supporting the conclusion Rufus attempted to "obtain" the girl:

> law enforcement discussed with Rufus that he could take the fourteen-year-old girl into a separate bedroom, alone, for an hour. Although Russo informed Rufus he would be in another room nearby for the girl's safety, Rufus sought to purchase from Russo an hour alone in a separate room with a fourteen-year-old girl in order to engage in sexual acts with her. Based on these facts, it was reasonable for the district court to conclude Rufus attempted to acquire temporary custody of a fourteen-year-old girl for the purpose of engaging in commercial sexual acts.

Rufus I, at ¶ 20. As discussed above, the burden rests with Rufus to overcome the deference this court must afford to the factual conclusion he attempted to "obtain" the underage girl.

Aside from the perfunctory allegation in his petition, Rufus has not provided any elaboration on the deficiencies within the state courts' findings he attempted to "obtain" the underage girl. As the North Dakota Supreme Court noted, Rufus's negotiations regarding the underage girl included that Rufus would be alone with the girl in a separate room. (Doc. No. 22-1 pp. 59-60, 77-78, 101). The record developed at trial indicated Rufus understood he would effectively have temporary custody of the girl in a separate room, and Rufus has not provided any reasonable argument to overcome the presumptive correctness of this finding. As interpreted by the North Dakota Supreme

Court, this temporary custody constituted "obtaining" the underage girl within the meaning of the human trafficking statute. Because Rufus has not carried his burden of overcoming the presumption of correctness applicable to this factual conclusion, and because this conclusion fell within the meaning of the human trafficking statute, as interpreted by the North Dakota Supreme Court, Rufus's insufficiency of the evidence claim fails.

b. "Caused" the Human Trafficking

Subsection (b) of Rufus's tenth ground for relief reads as follows:

> They also made claim that the Defendant caused the crime. When the State consents to the act and advertises its availability they surely can't accuse anybody but themselves. A contract does not cause the party to preform [sic], **duress or force** causes the person to perform. No claim was made of conduct related to impose duress or force the girl to perform, therefore the knowledge that the female was subject to human trafficking would not exist.

(Doc. No. 4 p. 2) (underlined and bolded text appearing in original). The court is left to guess about this claim. Reading this claim charitably, and in light of the other documents filed in this case, the court understands this claims to allege the evidence was not sufficient to support a conclusion that he attempted to "cause" the underage girl to engage in human trafficking.

Just as with the other subsection of the tenth ground for relief, Rufus has not provided a cogent explanation as to how the evidence presented in his case was insufficient to show he attempted to "cause" the underage girl to engage in human trafficking. Rather, the record from the trial indicates ample evidence supported such a conclusion:

> In this case, the context of the Yahoo Messenger conversation between Russo and Rufus shows Rufus knew and understood he was bartering over the cost of purchasing one hour alone with the girl for sexual acts. The girl would not have been able to provide sexual services to Rufus, but for his participation by initially responding to the advertisement, continuing to communicate with Russo regarding the logistics and rates, and appearing at the agreed upon meeting location. As such,

we conclude sufficient evidence shows that Rufus knew the fourteen-year-old girl would be subject to human trafficking by <u>causing</u> the fourteen-year-old girl to engage in sexual acts or sexual conduct.

<u>Rufus I</u>, at ¶ 27 (emphasis contained in original). As the North Dakota Supreme Court observed, the underage girl would not have been subjected to human trafficking but for Rufus's willingness to engage her services. On the record presented at the state courts, ample evidence shows Rufus attempted to cause the underage girl to engage in sexual acts or conduct falling within the implicated human trafficking statute. As discussed above, Rufus bears the burden of overcoming the presumption of correctness applicable to this factual conclusion and he has not done so here.

### F. Ground Seven: No Victim/Aiding & Abetting

Rufus's seventh ground for relief contains nothing but bullet-point allegations seemingly raising two distinct issues. The first component of this claim reads: "(a) The victim was fictitious; (b) No victim no injury." (Doc. No. 4 p.1). Giving Rufus the benefit of the doubt, this claim seemingly alleges he could not have been convicted of human trafficking without an actual victim to traffic. The second component of this claim reads: "(a) The State posted an add on Craigslist providing the services of a female prostitute; (b) The State[']s conduct solicited, facilitated, enabled, and provided the means for the crime." (Doc. No. 4 p. 1). Giving Rufus the benefit of the doubt, this claim essentially alleges the State cannot prosecute him for a crime it invited.[7]

These claims are nowhere to be found within Rufus's direct appeal or his original application for postconviction relief. Rufus raised his "no victim argument" and, though not explicitly, arguably alluded to his "invitation argument" in his amended application for postconviction relief. As noted

---

[7]Shades of this allegation can also be found in Rufus's tenth ground for relief, specifically subsection (b). (Doc. No. 4 p. 2) (alleging, "[w]hen the State consents to the act and advertises its availability they surely can't accuse anybody but themselves."). To the extent raised therein, that claim too suffers from procedural default.

above, the district court denied Rufus's attempt to amend his application to include such claims, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and regularly followed. Rufus has not made any allegation that neither is the case. Without the existence of such circumstances, this court cannot consider the substance of Rufus's seventh ground.

G. Ground Nine: Statutory Amendment

During the pendency of Rufus's criminal action, the North Dakota Legislature repealed the statutory provision under which he was charged and convicted, replacing it with what is now N.D.C.C. ch. 12.1-41. Rufus I, at ¶ 12 n.1 (noting "Chapter 12.1-40, N.D.C.C., was repealed on July 1, 2015, when N.D.C.C. § 12.1-41 was enacted."). Rufus's ninth claim for relief focuses upon this statutory amendment, though the precise nature of his claim is unclear. Subsection (a) of the claim alleges the legislature amended this provision "to correct the vagueness or unconstitutionality of the statute and retracted the Employer and John from the equasion [sic]." (Doc. No. 4 p. 2). Subsection (b) of the claim alleges the North Dakota Supreme Court warned "my former Attorney William Kerschner [sic] that the statue was very vague but he failed to recognize the fault and did not object to the issue." (Doc. No. 4 p. 2). The court is left to guess about this claim as it possibly includes a constitutional attack on the human trafficking statute and/or an ineffective assistance of counsel claim. No matter how construed, however, this claim fails just the same as Rufus's other claims.

These claims are nowhere to be found within Rufus's direct appeal or his original application for postconvicton relief. Further, while Rufus did assert a vagueness claim in his amended application for postconviction relief, the amended application did not contain any ineffective assistance of counsel claim for failing to raise that argument. As noted above, the district court

denied Rufus's attempt to amend his application, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and regularly followed. Again, Rufus has not made any allegation to that effect. Without the existence of such circumstances, this court cannot consider the substance of Rufus's ninth ground. Further, to the ninth grounds includes a claim that was never presented at the state court level, any return to state court to exhaust the claim would results in its dismissal on grounds of misuse process.

### H. Ground Eleven: "Willfully"

Rufus entitles his eleventh ground for relief: "the courts used 'wilfully' in a general uncertain indefinite sence [sic]." (Doc. No. 4 p. 2). The ground itself reads: "Not specifying 'intensional,' [sic] 'knowingly,' or recklessly' which is the statutory definition of Willfully. The Courts [sic] Opinion is that the defendant was willfull [sic] and does not corroborate the firmness of the intent." (Doc. No. 4 p. 2). The court is left to guess as to what Rufus alleges here. The claim can be read as alleging the state courts applied North Dakota's general culpability statute, N.D.C.C. § 12.1-02-02, incorrectly, that statute is so vague as to be of constitutional concern, or a litany of other possible interpretations. No matter how construed, this claim is not reviewable.

Rufus did not raise any issue with the culpability requirement in his direct appeal or his initial application for postconviction relief. Rather, he raised the issue in his amended application. As noted above, the district court denied Rufus's attempt to amend his application to include this claim, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and

regularly followed. Rufus has not made any allegation that neither is the case. Without the existence of such circumstances, this court cannot consider the substance of Rufus's eleventh ground.

 I.  Grounds 13-22: Miscellaneous

 In alleging an additional ten grounds for relief, Rufus incorporates the brief he submitted to the North Dakota Supreme Court during the state postconviction proceeding. (Doc. No. 1 pp. 17-51; Doc. No. 15-14). These claims track those additional claims Rufus sought to add in his amended application for postconviction relief issue-by-issue . (Doc. No. 18 pp. 37-57). The state district court denied Rufus's motion to amend his application to include such claims, a conclusion the North Dakota Supreme Court summarily affirmed. With that affirmance on a procedural basis, this court's inquiry is limited to whether that practice is firmly established and regularly followed. Rufus has not made any allegation that neither is the case. Without the existence of such circumstances, this court cannot consider the substance of Rufus's final ten grounds for relief.

## IV. **CERTIFICATE OF APPEALABILITY**

 Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); see also, United States v. Lambros, 404 F.3d 1034, 1036-37 (8th Cir. 2005); Garrett v. United States, 211 F.3d 1075, 1076-77 (8th Cir. 2000). When the court denies a petitioner's claim on procedural grounds without reaching the merits, the petitioner must demonstrate that reasonable jurists would find it debatable that a valid claim for the denial of

constitutional rights has been stated and that reasonable jurists would find it debatable that the district court was correct in its procedural ruling. Slack, 529 U.S. at 484.

In this case, reasonable jurists would not find debatable the recommended disposition of the claims, whether on the merits or on procedural grounds. Consequently, a certificate of appealability will not be issued.

## IV.   CONCLUSION

1.     The State's motion to dismiss (Doc. No. 16) is **GRANTED**.

2.     Rufus's § 2254 petition (Doc. No. 1) is **DENIED WITH PREJUDICE.**

3.     Rufus's Motion to Set Aside Judgment (Doc. No. 24) is **DENIED AS MOOT**.

4.     A certificate of appealability is not issued.

Dated this 21st day of February, 2018.

*/s/  Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court